14791

GRIFFITH v. METROPOLITAN LIFE INS. CO.

(200 S. E., 89)

 53

 ██

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellant, 

*Messrs. E. J. Best* and *J. B. McLaughlin,* for respondent.

December 13, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On January 24, 1936, the respondent, upon the solicitation of Mr. Andrews, an agent of the appellant, signed an application for a policy of insurance on the life of her minor son, Ernest G. Griffith, and paid the agent the sum of twenty-five cents, which was to be treated as a deposit and later applied in payment of the first weekly premium in the event the policy should be issued. She was given a receipt, acknowledging the payment of this premium deposit, which stipulated that if the application should be rejected the deposit would be returned to her.

The policy was never delivered, nor the premium returned. She alleges that the appellant willfully, unlawfully, and fraudulently retained this money, and appropriated and

converted same to its own use and benefit. The appellant filed a general denial, and from an adverse judgment brings the case to this Court upon several specifications assigning error because of the Court's refusal to grant its motions for a nonsuit and a directed verdict.

The appellant argues that the evidence indisputably shows that before the commencement of the action, it tendered the return of the amount provisionally deposited with it by the respondent, and that the respondent refused to accept it.

The evidence does not disclose the reason for appellant's rejection of the application. Some weeks after the application had been made the respondent called at the Columbia office of the appellant for the purpose of paying a premium on an existing policy issued to her on the life of her said son, which had been in force a considerable length of time. This policy also required the payment of twenty-five cents per week. While there she made inquiry of Miss Moody, the agent of the appellant who customarily received her payments, as to why the new policy applied for had not been delivered, or else why her money had not been returned. This agent told her that she was not informed on the matter, but would leave a memorandum on the desk of Mr. Andrews, the soliciting agent, calling the matter to his attention. Respondent says that she thereafter visited appellant's office and made repeated demands for the policy or for the return of her money, and that the appellant refused to return the deposit. That on one of these occasions, Miss Moody suggested that she apply the deposit on the current policy. This the respondent refused to do. The respondent likewise testified that eight weeks after she signed the application, she wrote the home office of the appellant, demanding the policy or the return of her money, but that she never heard from them.

No one during the several months she pursued this inquiry informed her that the policy application had been rejected. This is not denied.

For the defense, Miss Moody testified that the respondent upon several occasions inquired of her why she had not received the policy. She also says that she told the respondent that she would leave a note on the desk of Mr. Andrews, for him to go to see her, and that she did leave on his desk such a memorandum; that some time during this period she offered to refund the deposit, but that the respondent refused to accept it. While not at all sure, she thought the offer to refund was made in June, 1936.

Mr. Andrews, the agent who solicited the insurance, says that he found the memorandum on his desk, and having been informed that the insurance applied for had been refused, he on two occasions drove out to the home of the respondent in the city of Columbia for the purpose of returning the premium deposit. He says that upon both occasions he drove into the yard, blew his horn, but no one came to the door, and he was afraid to get out because several fierce dogs surrounded his car, growling at him. He made no further attempt to see her personally nor did he communicate with her by mail. He fixes the time of these visits as being late spring or early summer of the year 1936.

The respondent denied that Andrews ever visited her home again after receiving the application and the deposit. And she asserted that she owned no dog except a fox terrier.

The appellant contends that the evidence is uncontradicted that it at no time refused to return to the respondent the provisional deposit, and at no time indicated that it would not do so; but on the contrary that it tendered the return of such sum, which tender was rejected. In support of this contention, emphasis is placed upon a statement made by the respondent on cross examination that Miss Moody, the window clerk, did not tell her that the company would not return the deposit. But the respondent had previously testified, on direct examination, that upon demand the appellant had refused to return

the premium, and that no offer was made to refund her deposit until after suit was brought.

It is firmly settled in this jurisdiction that where the testimony, either of plaintiff or plaintiff's witnesses, is conflicting, and on one part of it she is entitled to go to the jury, and on the other part of it she is not, it is for the jury to reconcile the conflicting statements, and to say which shall prevail. *Trowbridge v. Charleston & Western Carolina Ry. Co.,* 90 S. C., 183, 73 S. E., 78; *Anderson v. Hampton & Branchville R. & L. Co.,* 134 S. C., 185, 132 S. E., 47; *Ott v. American Agr. Chemical Co.,* 171 S. C., 359, 172 S. E., 304.

We do not think the trial Judge committed error in submitting the case to the jury. There was some competent evidence tending to establish the material issues, and if the jury believed the plaintiff's testimony, as they evidently did, she was entitled to a verdict. And of course in passing upon the motions for nonsuit and directed verdict, the trial Judge was in duty bound to consider the evidence in the light most favorable to the plaintiff.

Reversible error is charged because it is said the lower Court permitted the respondent to change the theory of her case from that of breach of contract accompanied by an act of fraud, to one for actionable fraud.

The appellant made no motion to require the respondent to elect. This occurred: Near the close of the respondent's testimony, her counsel stated that the action was based upon actionable fraud. Later, when the Judge overruled the motion made for a nonsuit, in reply to his inquiry as to the nature of the cause of action, counsel for the respondent stated that it was for breach of contract, accompanied by a fraudulent act.

But it is clear from the explanatory statement then made by counsel that he regarded the action as being one for actionable fraud or for conversion. Still later, when the motion for a directed verdict had been made and was being

considered, counsel for the respondent stated that the action was one for actionable fraud. The trial Judge refused to hold that any binding election had been made, and we think under the circumstances that in so deciding he committed no error. The Judge offered to permit appellant to put up further testimony if he wished to do so in response to the issue made, but this offer was declined.

It does not appear that the appellant was prejudiced by the Court's ruling.

The appellant contended in the lower Court that the evidence showed conclusively that the respondent had no insurable interest in the life sought to be insured, because she had formally parted with the custody of her son, and it presses this point here. But this issue is not relevant upon the question of fraud. The appellant was not obligated to issue the policy applied for. When, however, it rejected the application for whatever reason, it was under the duty of returning the premium deposit.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.